UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRISTAR INC** | **CIVIL ACTION NO:** |
| **VERSUS** | **DISTRICT JUDGE**<br>**HON.** |
| **MARINE CONTROL, and**<br>**LARRY SINGH** | **MAGISTRATE JUDGE**<br>**HON.** |

### COMPLAINT

1.

Plaintiff, Tristar Inc., is a Guyanese company, and the purchaser of a barge, the CBR 5015.

2.

Defendant Marine Control Inc. is a Miami company and the seller of that barge.

3.

Defendant Larry Singh is the principal of Marine Control Inc. At all times described infra, the actions of Marine Control were taken by and through Larry Singh.

4.

This Court has subject matter jurisdiction under 28 U.S.C. 1333 because this is a contract over the sale of a barge, which is a maritime contract. To the extent necessary, this Court also has subject matter jurisdiction under 28 U.S.C. 1332 because the parties are fully diverse and the amount in controversy exceeds $75,000.

5.

This Court has personal jurisdiction over defendants because the barge at issue was at all material times in this judicial district and the barge was sold and delivered from Marine Control, Inc. to Tristar, Inc. in this judicial district.

6.

On or about May 18, 2024, Marine Control, Inc. and Tristar, Inc. entered into an agreement of purchase and sale relative to the barge CBR 5015.

7.

The CBR 5015 is a 235 x 40-foot steel barge, built in 1949.

8.

Prior to entering into the purchase agreement, Tristar, Inc. by and through its principal, Krishna Persaud, had communicated with the seller, Marine Control Inc., and Larry Singh.

9.

Tristar had made plain to defendants that Tristar intended to take the barge from its berth to Guyana, for the purpose of holding an excavator and performing work.

10.

Tristar, by and through its principal, walked the barge to ensure it was reasonably fit for its intended purpose.

11.

Owing to equipment that was placed on the barge and owing to steel plates that had been strategically and intentionally welded over manholes, Tristar was not able to view the internals of the barge.

12.

The equipment was placed on the barge and the steel plates were welded over the manholes with the express purpose and intention by Marine Control to deprive Tristar of the ability to look at the internals of the barge. Tristar was, therefore, not able to look at the internals of the barge.

13.

Instead, Tristar relied on the representations of Marine Control, and of Larry Singh, that the barge was staunch and fit and prepared to travel to Guyana where it would be able to work as directed.

14.

These representations by Marine Control and by Larry Singh were false, and they were known to be false when they were made. Instead, the barge was, in fact, a leaker, and it was actively leaking, causing Mr. Singh and Marine Control to place equipment over some manholes and steel plates over other manholes, to disguise the fact that the barge was leaking.

15.

The leaks were neither sporadic nor localized, but instead they were the consequence of a profoundly deteriorated condition of the barge throughout the hull, which deteriorated condition was knowingly and intentionally hidden from the purchaser with the intent to defraud Tristar.

16.

In addition, Marine Control had only recently purchased the barge. As a material inducement to sell the barge, Marine Control and Mr. Singh falsely, and knowingly falsely, reported to Tristar that Marine Control had purchased the barge for $650,000, when in fact Marine Control had purchased the barge for $350,000, some short time before selling the barge.

17.

Marine Control and Mr. Singh provided this false and inflated purchase price to indicate to Tristar that the value of the barge was, in fact, $650,000, and it was in the condition of a barge of like dimensions worth $650,000, when in fact the barge was in a substantially poorer condition.

18.

On or about May 20, 2024, Tristar and Marine Control entered into three agreements. One was an agreement of purchase and sale, whereby Tristar purchased the barge for $720,000 – a 10% premium over the $650,000 that Marine Control falsely stated it had paid for the barge.

19.

Tristar duly paid Marine Control $720,000 and took ownership of the barge.

20.

The second was an Agreement for Upgrade of Barge, pursuant to which Marine Control agreed, for $50,000 additionally, to "remov[e] vents and install[] 4 ft rails, paint the deck of the barge only (138 ft x 40 ft), install manhole at the side, install ladder inside barge and perform all necessary task to have the barge to transfer sand. Within a estimated time of 30 days."

21.

Marine Control had informed Tristar that the work referenced in this Agreement for Upgrade was the sum total of all work necessary to be done to the barge for the barge to travel to Guyana and begin working to transfer sand. In fact the work required was profoundly more.

22.

The third agreement was an Agreement for Delivery of Tug and Barge, that provides "Both parties agree to deliver the barge to Guyana. The barge will be towed by the 'SAMSON' TUG /

Supply Boat owned and operated by Marine Control Inc. Both parties agree that the estimated cost to deliver the barge from Louisiana to Guyana via the tug will be shared equally." The parties agreed to a price for the transit of $200,000 (shared equally), which Tristar paid its $100,000 to Marine Control Inc.

23.

Marine Control entered into this Agreement because it, and its principal, Larry Singh had falsely and fraudulently represented to Tristar that the barge was ready for delivery to Guyana.

24.

Following payment of all amounts to Marine Control, Tristar took possession of the barge.

25.

Immediately upon opening the holds, which were now accessible thanks to the removal of equipment, Tristar became aware that it had been deeply, grievously, and fraudulently misled about the condition of the barge. In fact, the barge was at all times leaking, and the barge required constant pumping to stay afloat.

26.

The internals of the barge had significand and profound wastage and the barge was in no way fit to be towed to Guyana, nor was it fit to be towed without significant work.

27.

Tristar began efforts to repair the barge and make it in a condition where it was staunch and fit and able to be towed to Guyana, and to begin work holding an excavator to move sand as contracted.

**COUNT 1: BREACH OF CONTRACT**

28.

Marine Control breached its contract with Tristar to provide a staunch and fit and seaworthy barge that was suitable for its intended purpose. Marine Control sold a $350,000 barge instead of a $720,000 barge.

29.

Marine Control breached its contract with Tristar to perform work to the barge. Instead, Marine Control performed no work to the barge.

30.

Marine Control breached its agreement to tow the barge to Guyana. At the time of filing of this lawsuit, Tristar has instead towed the barge to Guyana, following significant work done to the barge. Marine Control and its principal, Larry Singh, have not returned the $100,000 to Tristar for Marine Control' anticipated towage of the barge, despite written promise to do so, and no right to keep those funds.

31.

Tristar is entitled to all foreseeable damages for Marine Control' breach of contract, outlined infra.

**COUNT 2: FRAUD AND FRAUDULENT INDUCEMENT**

32.

The conduct of Marine Control and of its principal, Larry Singh, in materially and falsely representing the purchase price of the barge; of materially and falsely representing the condition of the barge; and of intentionally denying access for adequate inspection of the barge, all as

outlined *infra*, constitutes fraud, and it further constitutes fraudulent inducement. But for the fraud and fraudulent inducement by Marine Control and by Larry Singh, Tristar never would have considered purchasing the barge.

33.

Tristar is entitled to damages for Marine Control's and for Larry Singh's fraud and fraudulent inducement.

**DAMAGES**

34.

As a consequence of the above tortious and fraudulent conduct by defendants, Tristar has suffered damages.

35.

Tristar paid $720,000 to Marine Control for a barge that was worth substantially less, based on Marine Control's intentionally false and fraudulent representations, entitling Tristar to the damages for the difference between the actual value of the barge and the sale price, approximately $335,000.

36.

Tristar paid $50,000 to Marine Control for certain work to be performed, which work was never, in fact, performed. Tristar is entitled to these funds from Marine Control and Larry Singh.

37.

Tristar paid $100,000 to Marine Control for towage of the barge, which Marine Control never performed, and despite written promise to do so, Marine Control never returned the funds. Tristar is entitled to these funds from Marine Control and Larry Singh.

38.

Tristar has been required to repair the barge, and to fleet and monitor the barge while it is being repaired, to make the barge fit to be towed to Guyana, as a direct and immediate consequence of Marine Control's breach of contract, and of Marine Control's and Larry Singh's fraud and fraudulent inducement. Tristar is entitled to these damages from Marine Control and Larry Singh.

39.

Tristar has been paying for an excavator at the rate of $2,200 per day to excavate from the barge. However, Tristar has not been able to utilize that excavator. Tristar is entitled to damages from Marine Control and Larry Singh for the cost of the excavator times the timeframe from when the excavator barge should have arrived until the time when the barge will arrive, following repairs and towage, at $2,200 per day.

40.

Tristar is entitled to attorney's fees, interest, and punitive damages under general maritime law for Marine Control' and Larry Singh's fraud and fraudulent inducement.

**PRAYER**

WHEREFORE, plaintiff Tristar prays that after proceedings, there be judgment in its favor and against Marine Control and Larry Singh, affording Tristar damages as prayed, and for whatever other just or equitable remedies this Court finds appropriate.

**DATED**: October 17, 2024

*\*\*Signature Block located on the following page\*\**

Respectfully submitted:

**BOHMAN | MORSE, LLC**

/s/Harry E. Morse
HARRY E. MORSE (#31515)
MARTIN S. BOHMAN (#22005)
400 POYDRAS STREET, SUITE 2050
NEW ORLEANS, LA 70130
TELEPHONE: (504) 930-4009
FAX: (888) 217-2744
E-MAIL: HARRY@BOHMANMORSE.COM
E-MAIL: MARTIN@BOHMANMORSE.COM

*Attorneys for TriStar*